IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AON ESOLUTIONS, INC.<br>200 East Randolph Street<br>Chicago, IL  60601,<br><br>   Plaintiff,<br><br>  v.<br><br>STEPHEN BRESLIN<br>1309 E. Berks Street<br>Philadelphia, PA  19125,<br><br>JAMES HAAS<br>S97 W13169 Champions Drive<br>Muskego, WI  53150,<br><br>GINA ROTHWEILER<br>927 JEANNETTE STREET<br>DES PLAINES, IL  60016, AND<br><br>RISKONNECT, INC.<br>30 South Park Square, Suite 202<br>Marietta, GA  30060<br><br>   Defendants. | Civil Action No.<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Aon eSolutions, Inc. brings this action against its former employees, Stephen Breslin, James Haas and Gina Rothweiler, as well as their current employer, Riskonnect, Inc. for violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*, misappropriation of confidential information and conspiracy to engage in unfair competition. Breslin, Haas and Rothweiler were business producers for Aon, who on the eve of their resignation, copied and removed, without authorization, Aon computer files containing trade secrets and/or confidential business information for the apparent purpose of using such

information to solicit business for Riskonnect. On information and belief, Riskonnect encouraged or condoned the unauthorized activity and has or will benefit from their unfair competition. Aon seeks injunctive relief and damages based on Defendants' wrongful activities.

## PARTIES

1. Plaintiff Aon eSolutions, Inc. ("Aon") is a corporation duly organized and existing under the law of the State of California with a principal place of business within the State of Illinois. Aon is authorized to conduct business in the Commonwealth of Pennsylvania.

2. Stephen Breslin ("Breslin") is an individual with a last known address at 1309 E. Berks Street, Philadelphia, Pennsylvania. On information and belief, Breslin is a citizen of the Commonwealth of Pennsylvania. From in or about July 24, 2000 to May 23, 2011, Breslin was employed by Aon as a Business Development Manager responsible for obtaining new sales of Aon products.

3. James Haas ("Haas") is an individual with a last known address at S97 W13169 Champions Drive, Muskego, Wisconsin. From in or about May 11, 1998 to May 23, 2011, Haas was employed by Aon as a Regional Business Development Manager responsible for managing a team of Business Development Managers, including Gina Rothweiler, as well as obtaining new sales of Aon products. Haas has solicited business within the Commonwealth of Pennsylvania.

4. Gina Rothweiler ("Rothweiler") is an individual with a last known address at 927 Jeannette Street, Des Plaines, Illinois. From in or about August 14, 2000 to May 26, 2011, Rothweiler was employed by Aon as a Business Development Manager responsible for obtaining new sales of Aon products. Rothweiler has solicited business within the Commonwealth of Pennsylvania.

5. Riskonnect, Inc. is a Delaware corporation with a principal place of business within the State of Georgia. Riskonnect is authorized to do business and does conduct business within the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

6. This Court has subject matter over this matter pursuant to 28 U.S.C. §1331 because the complaint asserts a claim arising under the Computer Abuse and Fraud Act, a federal law codified at 18 U.S.C. § 1030, *et seq*. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7. Venue properly lies in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claim occurred within the geographic boundaries of the United States District Court for the Eastern District of Pennsylvania where defendant Breslin resides.

## FACTUAL BACKGROUND

8. Aon provides technology solutions and products for use in risk management and insurance, including risk management information systems ("RMIS").

9. Aon has expended substantial amounts of time, money, and resources in developing its customer relationships and confidential information in including product and service information, marketing and business strategies, customer lists, contact information and preferences, pricing and fee information and contract expiration dates, proposals, sales plans and reports, budgets, data security assessments, client emails, client case studies, presentations and templates (hereinafter "Confidential Information"). Aon has achieved, and will continue to maintain, a competitive advantage by preserving those relationships and the confidentiality of its data.

10. Aon has exercised, and continues to exercise, efforts to maintain the secret nature of its Confidential Information. For example, Aon maintains an extensive Information Security Policy to provide appropriate controls and protections of company and client information. The program includes security policies and awareness training to instruct employees concerning their responsibility to maintain the confidentiality of such information. Aon restricts access to the physical premises where its computer server is located and password protects its access to Confidential Information (allowing different employees access to different data, depending on their roles). A security policy review and sign-off is required by all employees when hired and annually thereafter. Security awareness training is provided annually for all employees by the Chief Information Security Officer of Aon eSolutions. Additionally, Aon's Code of Business Conduct and Corporate IT policy include specific language regarding security of confidential information and must be reviewed and signed off at new hire on-boarding and annually thereafter.

11. Riskonnect is a privately held company founded in July 2007 by Robert C. Morrell ("Morrell"). In 1994, Morrell co-founded the company, Risk Laboratories, LLC, which was acquired by Aon in 2004 and renamed Aon eSolutions. Morrell worked for Aon as Chief Technology Officer until June 15, 2007 when he voluntarily resigned. Riskonnect provides a RMIS that directly competes with segments of Aon's products. On information and belief, Riskonnect is seeking to expand its iVOS products to further compete with Aon.

12. At the time of resignation from Aon, Breslin's principal duty was to solicit and cultivate new business relationships on behalf of Aon. In connection with his duties on behalf of Aon, Breslin was afforded access to Aon's Confidential Information.

13. On or about Sunday, May 22, 2011, Breslin accepted a position with Riskonnect as a Sales Executive eligible for enhanced compensation based on his success at achieving certain sales targets.

14. Despite his intention to resign from Aon, on Sunday May 22, 2011, Breslin accessed Aon's computer system and copied Aon's Confidential Information to a portable storage device and/or his home computer. The information downloaded by Breslin included (1) Aon's client and former client contact lists and pipeline/lead reports by industry, state and market segment; (2) Requests for Proposals from clients and prospects; (3) iVOS and Risk Console client fee matrix; (4) Aon eSolutions 2011 Sales Plan; (5) Client Executive Summaries; (6) client case studies and data security assessments; (7) presentations and marketing brochures; (8) client specific emails, contracts and proposals; (9) Risk Advantage; (10) budgets for client; (11) conference meeting attendee contact information,; (12) win summary report by industry, (13) opportunities report; (14) client satisfaction level detail; (15) sales execution plan for 2010 – Eastern Region team; (16) Sales executions report 2011 for SVP, Managing Director of Sales; and (17) closing strategy documents.

15. Breslin's duplication of Aon's Confidential Information was without the consent of Aon and in excess of any authorization Breslin had during his employment with Aon.

16. At the time of resignation from Aon, Haas's principal duties were to solicit and cultivate new business relationships on behalf of Aon and manage business development employees. In connection with his duties on behalf of Aon, Haas was afforded access to Aon's Confidential Information.

17. On or about Sunday, May 22, 2011, Haas accepted a position with Riskonnect as a Sales Executive eligible for enhanced compensation based on his success at achieving certain sales targets.

18. Despite his intention to resign from Aon, on Sunday May 22, 2011, Haas accessed Aon's computer system and copied Confidential Information to a portable storage device and/or his home computer. The information downloaded by Haas included (1) prospect information for several Aon Opportunities Companies, with their contact information and detailed information of the account and opportunity; (2) RiskConsole and iVOS opportunity and client lists from SalesForce.com and several regional Aon Risk Solutions offices; (3) Risk-Console Client Module Analysis and pricing module; (4) Client Contract, Letter of Intent and Statement of Work templates; (5) Aon Core Ideology; (6) incentive compensation plans for Aon eSolutions sales employees; (7) health and benefit opportunity lists; (8) networking information by Aon Risk Solutions office for several cities; (9) Global Sales reports; (10) client information reports for won/closed Aon global accounts 2009 and 2010; (11) campaign reports; (12) SaaS benefits on all products; (13) product and sales training presentation for Riskconsole; (14) internal benchmarking claims and exposure data; (15) Aon eSolutions overview; (16) Aon copyrighted white paper for BI advertisement; (17) Sales Plan and pipeline reports for several Aon business development managers and leaders; (18) budget and forecasting allocations; (19) business process improvement plans; (20) services sell sheets, (21) Risk Data Strategy for Aon; (22) Riskconsole litigation management reports; (23) Deals won from competitors; (24) Sales to Service document; (25) closed sale ranking; and (26) proposals issued by current year .

19. Haas's duplication of Aon's Confidential Information was without the consent of Aon and in excess of any authorization Haas had during his employment with Aon.

6

20. At the time of her resignation from Aon, Rothweiler's principal duty was to solicit and cultivate new business relationships on behalf of Aon. In connection with her duties on behalf Aon, Rothweiler was afforded access to Aon's Confidential Information.

21. On or about Sunday, May 22, 2011, Rothweiler accepted a position with Riskonnect as a Sales Executive eligible for enhanced compensation based on her success at achieving certain sales targets.

22. Despite her intention to resign from Aon, on May 20, 2011, Rothweiler accessed Aon's computer system and copied Confidential Information to a portable storage device and/or her home computer. The information downloaded by Rothweiler included (1) detailed client and former client contact lists and pipeline/lead reports from Salesforce.com; (2) ARS Chicago client list; (3) Risk Console pricing model; (4) Aon eSolutions contract templates; (5) active report dashboard; (6) detailed prospect account information; (7) client and prospect related presentation decks; (8) client requirements documents; (9) pipeline information on sales opportunities for Aon business development managers; (10) claim provider report; and (11) Aon Laser request form template and Laser information.

23. Rothweiler's duplication of Aon's Confidential Information was without the consent of Aon and in excess of any authorization Rothweiler had during her employment with Aon.

24. If Breslin, Haas and Rothweiler are permitted to continue working for Riskonnect, Aon will suffer irreparable injury which can only be avoided by enjoining its former employees from working for Riskonnect for an appropriate period of time. Based on the similarity between their apparent job responsibilities at Riskonnect, and their former responsibilities at Aon, as well as their financial incentive in developing business for Riskonnect, Breslin, Haas and Rothweiler

cannot possibility perform their responsibilities at Riskonnect without disclosing and relying upon Aon's Confidential Information. If Breslin, Haas and Rothweiler were to reveal Aon's Confidential Information to Riskonnect, or use it on Riskonnect's behalf, it would be extremely harmful to Aon's competitive position in the marketplace.

25. Moreover, Breslin, Haas and Rothweiler copied massive amounts of Aon Confidential Information immediately before resigning from Aon – information that would be invaluable in the hands of a competitor like Riskonnect. On information and belief, in the course of their brief tenure with Riskonnect, Rothweiler and Breslin have already relied upon Aon information in soliciting an Aon prospect.

26. By virtue of the unlawful conduct described above, Aon has already suffered serious economic and business injury, and if such conduct is not enjoined, Aon faces further injury which is irreparable. The harm to Aon includes, but is not limited to, the misappropriation, misuse, and disclosure of Aon's Confidential Information, the loss of Aon's goodwill, and the impairment of and interference with Aon's existing and prospective contractual relations with its employees and its customers.

### FIRST CAUSE OF ACTION
**(Computer Fraud and Abuse Act)**

27. Aon repeats and realleges each and every allegation set forth in paragraphs 1 through 27 hereof as if fully set forth herein.

28. Aon's computer system is connected to the internet and is a "protected computer" within the meaning of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1830(e)(2)(B).

29.     By connecting external hard drives and copying Aon's computer database, including its Confidential Information, defendants Breslin, Haas and Rothweiler accessed a protected computer without authorization or in excess of their authorization.

30.     Aon has had to investigate and will have to continue to monitor whether defendants unauthorized access to its protected computer has resulted in damage. The cost of this investigation and monitoring has already exceeded $5,000 in time and expenses.

31.     By copying Aon's Confidential Information, defendants have knowingly, and with intent to defraud, exceeded their authorized access to a protected computer and obtained information with a value in excess of $5,000 in violation of 18 U.S.C. § 1830(a)(4).

32.     As a result of defendants violations of CFAA, Aon is entitled to an award of economic damages pursuant to 18 U.S.C. § 1830(g).

## SECOND CAUSE OF ACTION
### (Misappropriation)

33.     Aon repeats and realleges each and every allegation set forth in paragraphs 1 through 32 hereof as if fully set forth herein.

34.     Breslin, Haas and Rothweiler, individually and collectively, in violation of Aon's Information Security Policy, in excess of their authority and without the consent of Aon, entered Aon's computer system, accessed Aon's Confidential Information, duplicated such information onto hard drives or other storage devices, and retained such information in their possession for use in competing with Aon following their resignation from employment with Aon.

35.     As a result of such unlawful actions, Aon has suffered and will continue to suffer damages, including the cost of conducting a forensic analysis of its computer system to determine the extent of defendants' wrongful conduct.

36. On information and belief, Riskonnect encouraged and incited the wrongful actions of Breslin, Haas and/or Rothweiler and has failed to take adequate steps to assure that Breslin, Haas and Rothweiler do not utilize the misappropriated Confidential Information to Riskonnect's advantage and Aon's detriment.

37. Through the conduct described above, Defendants have engaged in the actual or threatened misappropriation of Aon's Confidential Information, in violation of common law and the Pennsylvania Uniform Trade Secrets Act, 12 Pa.C.S. § 5301 et. seq.

38. Defendants actions were intentional, willful, outrageous and malicious, and justify the imposition of exemplary damages.

### THIRD CAUSE OF ACTION
### (Breach of Contract)

39. Aon repeats and realleges each and every allegation set forth in paragraphs 1 through 38 hereof as if fully set forth herein.

40. Upon accepting employment with Risconnect, defendants Breslin, Haas and Rothweiler each executed a confidentiality agreement pursuant to which they would not improperly use or disclose any proprietary information or trade secrets of any former employer, and would not bring on to Riskonnect's premises any unpublished document or proprietary information belonging to a former employer.

41. As a former employer of Breslin, Haas and Rothweiler, Aon is an intended third-party beneficiary of the agreements between Riskonnect and Breslin, Haas and Rothweiler.

42. By engaging in the acts described above, Breslin, Haas and Rothweiler have breached their contracts with Riskonnect which breach has resulted in harm to Aon.

## FOURTH CAUSE OF ACTION
### (Breach of Contract with Aon)

43.     Aon repeats and realleges each and every allegation set forth in paragraphs 1 through 42 hereof as if fully set forth herein.

44.     During his employment with Aon, Breslin entered into a contract pursuant to which he agreed, among other things, that he would not, for two years after the end of his employment with Aon "attempt to enter into ... any business relationship of the same type or kind as the business relationship which exists between [Aon] and its clients or customers to provide services related to the business of [Aon] for any ... customer for whom [he] was the producer or on whose account [he] worked or became familiar during 24 months prior to the end of employment."  Breslin further agreed that during that period he would not "induce or attempt to induce, or to cause any person or other entity to induce or attempt to induce, any person who is an employee of [Aon] to leave [Aon].

45.     On information and belief, Breslin has attempted to enter into relationships with Aon clients on behalf of Riskonnect.

46.     On information and belief, Breslin has induced or attempted to induce Aon employees to leave Aon and join Riskonnect.

47.     Breslin's actions were intentional, and in breach of their agreement to maintain the confidentiality of Aon information.

48.     As a result of such breach by Breslin, Aon has suffered damages, the exact amount to be proven at trial.

### FIFTH CAUSE OF ACTION
**(Conspiracy)**

49.     Aon repeats and realleges each and every allegation set forth in paragraphs 1 through 48 hereof as if fully set forth herein.

50.     On information and belief, defendants conspired with each other to, among other things, breach Breslin's contract and misappropriate Aon's Confidential Information for the purpose of competing unfairly for Aon's clients on behalf of Riskonnect.

51.     In furtherance of the conspiracy, Riskonnect informed Aon of its confidentiality agreements with Breslin, Haas and Rothweiler, for the purpose of deceiving Aon into believing that its Confidential Information had not been compromised.

52.     As a direct and proximate result of those acts, Aon has incurred and will continue to incur damages, including but not limited to lost business, lost profits, damage to its good will and the cost of hiring an retaining former and new employees, in an amount to be proven at trial.

### SIXTH CAUSE OF ACTION
**(Interference With Business Relations)**

53.     Aon repeats and realleges each and every allegation set forth in paragraphs 1 through 52 hereof as if fully set forth herein.

54.     Prior to the defection, Aon enjoyed advantageous business relations with numerous clients. Aon enjoyed substantial profit from its economic and contractual relationship with said clients and invested substantial sums of money in soliciting, developing and maintaining its economic relationships with said clients.

55.     Breslin, Hass and Rothweiler, acting in concert with Riskonnect, deliberately, wrongfully, and without justification interfered with the advantageous economic relationships between Aon and its clients and prospects by soliciting and attempting to induce said clients and

prospects to abandon their relationships with Aon and transfer their business to Riskonnect. Defendants' interference was accomplished by wrongful means, including the conduct alleged herein, and as part of a common plan and scheme to raid Aon's clients and prospects by, among other things, using Aon's Confidential Information to obtain a competitive advantage.

56. As a direct and proximate result of the conduct alleged above, Aon has sustained and will incur further damages, including but not limited to damages reflecting lost business, lost profits, and damage to its goodwill, in amounts to be proven at trial. Aon has also suffered and will continue to suffer immediate and irreparable harm, and will continue to suffer such injury until the breaches are enjoined.

57. Defendants' wrongful acts and conduct as described above were willful, oppressive, fraudulent, and malicious, and Aon is therefore entitled to punitive damages according to proof.

### SEVENTH CAUSE OF ACTION
### (Interference With Prospective Economic Advantage)

58. Aon repeats and realleges each and every allegation set forth in paragraphs 1 through 57 hereof as if fully set forth herein.

59. Prior to the defection, Aon enjoyed advantageous relations with employees which would have continued to result in an economic benefit to Aon. Aon invested substantial sums of money in developing and maintaining its relationships with said employees.

60. By the above, described acts, Breslin, Hass and Rothweiler acting in concert with Riskonnect, deliberately, wrongfully, and without justification interfered with the expected economic advantage between the relationships between Aon and its employees.

61. Defendants wrongfully conspired and engaged in a plan to raid Aon of its employees. Defendants deliberately, wrongfully, and without justification interfered with the

relationship between Aon and its employees and consultants by soliciting other Aon employees, and inducing these employees to use confidential information to the detriment of Aon and to their advantage.

62.  As a direct and proximate result of the above-described conduct, Aon has sustained and will incur further damages, including but not limited to damages reflecting lost business, lost profits, damage to its goodwill, costs of hiring and retaining former and new employees, in amounts to be proven at trial.  Aon has also suffered and will continue to suffer immediate and irreparable harm, and will continue to suffer such injury until the breaches are permanently enjoined.

63.  Defendants' wrongful acts and conduct as described above were willful, oppressive, fraudulent, and malicious, and Aon is therefore entitled to punitive damages according to proof.

### EIGHTH CAUSE OF ACTION
(Unjust Enrichment)

64.  Aon repeats and realleges each and every allegation set forth in paragraphs 1 through 63 hereof as if fully set forth herein.

65.  While still employed by and being compensated by Aon, Breslin, Haas and Rothweiler, in violation of their duty of loyalty to Aon, duplicated Confidential Information for use in a manner contrary to Aon's interest and to Aon's detriment.

66.  It would be inequitable and unjust for Defendants to retain without payment, the pecuniary benefits they have gained from misappropriating Aon's Confidential Information.

67.  Defendants have been unjustly enriched and should be ordered to provide commensurate restitution to Aon.

68. As a result of Defendants' actions, Aon has been damaged to an extent which currently cannot be calculated or ascertained but which includes salary paid to Breslin, Haas and Rothweiler during the period of their disloyalty, lost profits, lost investment of money and resources, and ill-gotten profits Defendants have derived or in the future may derive from their misappropriation of Aon's Confidential Information.

69. There is no justification for Defendants' enrichment at Aon's expense.

**WHEREFORE**, Aon demands judgment against Defendants and requests the following relief:

a. Defendants, and all other persons or entities acting in concert with them or on their behalf, be permanently enjoined from soliciting or accepting business from and from all other clients and prospects for whom they misappropriated confidential information;

b. Defendants, and all other persons or entities acting in concert with them or on their behalf, be permanently enjoined from directly or indirectly using, disclosing or retaining any Confidential Information of Aon;

c. A judgment in Aon's favor and against Defendants for monetary damages, including, but not limited to, all amounts necessary to compensate Aon for defendants' wrongful activities, including reasonable attorneys' fees and costs;

d. A judgment in Aon's favor and against defendants for punitive or exemplary damages for their willful and malicious conduct;

e. An accounting of all revenues earned by defendants and/or any entity for whom they have been conducting business since May 23, 2011; and

f. Such further relief as the Court deems just.

g. Plaintiff demands a jury trial.

 

William J. Leahy (PA#80340)
**LITTLER MENDELSON, P.C.**
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA  19102.1321
267.402.3000
wleahy@littler.com

Attorneys for Plaintiff

Of Counsel:

Andrew P. Marks
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022
212.583.9600
amarks@littler.com

Dated: August 5, 2011